## Commonwealth ex rel. *v.* Parker, Appellant.

*Divorce—Validity of foreign decree—Notice of proceedings—Voluntary appearance—Order for support.*

1. A husband will be entitled to the vacation of an order for support, where he sets up a subsequent divorce under a decree of a court of another state, if it appears that the wife voluntarily appeared and filed an answer in the divorce proceedings, setting up a complete answer to the libel, and also counter-charges intended to move the foreign court to enter a judgment in her favor; and this is the case although the wife had no notice of the divorce proceedings, except a paper purporting to be a notice received through the mails, and although she charged that her husband had never been a bona fide resident of the state in which he procured the divorce.

2. In such a case under the operation of the federal constitution, the courts of Pennsylvania must give full faith and credit to the judgment of the court of the sister state, which by the laws of that state, have jurisdiction of the subject-matter, and which, by the voluntary act of the wife acquired jurisdiction of her person.

Argued Oct. 15, 1914.    Appeal, No. 88, Oct. T., 1914, by defendant, from order of the Municipal Court of Philadelphia, Feb. T., 1914, No. 46, refusing to vacate order of support in case of Commonwealth ex rel. Sarah E. Parker v. Horace L. Parker.    Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ.    Reversed.

Rule to vacate order of support.
The facts are stated in the opinion of the Superior Court.[1]

---

[1] The findings of fact and conclusions of law of the court at Reno were as follows:

"Plaintiff and defendant were duly and regularly married in Philadel-

*Error assigned* was order refusing to vacate decree.

*John H. Fow*, with him *F. Carroll Fow*, for appellant.—A party exempt from jurisdiction may waive his personal privilege, and if he does so the jurisdiction of the court is complete: Haddock v. Haddock, 201 U. S. 562; Cheever v. Wilson, 9 Wall. 108; Laing v. Wrigley, 160 U. S. 531; Guthrie v. Lowry, 84 Pa. 533; Hughes v. Schreiner, 202 Pa. 488; Levison v. Blumenthal, 25 Pa. Superior Ct. 55.

A judgment obtained in one state cannot be retried upon the merits in an action thereon in the courts of another state, if rendered by a court having jurisdiction: Dowling v. McGregor, 91 Pa. 410; Atherton v. Atherton, 181 U. S. 155.

*Harry A. Mackey* and *Franklin E. Barr*, assistant district attorney, and *Samuel P. Rotan*, district attorney, for appellee.—The foreign decree was invalid: Com. v. Bolich, 18 Pa. C. C. R. 401; Com. v. Allport, 26 Pa. C. C. R. 26; Com. v. Maize, 23 W. N. C. 572; Scott v. Noble, 72 Pa. 115.

---

phia, Pennsylvania, on the 9th day of November, 1907, and have since so remained and now are husband and wife.

"That during and for over six months next before filing plaintiff's complaint, plaintiff had continuously resided in Washoe County, Nevada, during which time plaintiff was a bona fide resident of Washoe County, Nevada.

"That since said marriage, between plaintiff and defendant, defendant has been guilty of extreme cruelty towards plaintiff as alleged in plaintiff's complaint.

"The Court finds that plaintiff is entitled to a judgment and decree of this court dissolving and annulling the marriage contract and relations now and heretofore existing between plaintiff and defendant, and restoring each to the status of single persons.

"It is further found that plaintiff should pay to defendant the sum of Twenty-five Dollars (25) per month commencing the first day of November, 1913, which sum is payable on the first day of each month thereafter, until such time as defendant re-marries or the further order of this court."

OPINION BY HEAD, J., February 24, 1915:

The appellant filed his petition in the municipal court setting forth that, by virtue of a desertion proceeding theretofore begun by his former wife, the court of quarter sessions of the same county had made an order or decree directing him to pay a certain weekly sum for the support of his said wife. The petition further averred that for a considerable time after the entry of the said order he had paid the installments as they fell due, and he had then been awarded a decree of absolute divorce from his former wife, by virtue of which the marital relation theretofore existing between them had been severed and dissolved. Further alleging that he had discharged all of the payments imposed on him by the said order down to the date of the entry of the decree of divorce, he prayed that the said order directing the payment of the weekly sum to his former wife be vacated and set aside. Manifestly, if the averments of the petition were duly established, the prayer of it should have been granted.

In support of the important averment in his petition, the appellant attached thereto a duly exemplified copy of the record of the second judicial court of the state of Nevada, in an action for divorce, wherein the appellant was the plaintiff and the appellee the defendant. The authenticity of this record is not in any way impeached. If there were nothing else in the case to prevent full faith and credit being given to its judgment, the case of the appellant would have been made out. The relator then came into the municipal court and filed her answer to the petition in which she avers she received through the mails a paper purporting to be a notice of the institution by her husband of the action for divorce against her in the courts of Nevada. She further alleged that such court never had any jurisdiction of her person; that she had, at the time her husband left this state, a legal domicile therein which she had never changed; that her husband had never been a bona fide

resident of the state of Nevada; but that notwithstanding these facts she had prepared and filed in the Nevada court an answer denying all of the charges contained in the libel and asserting that her husband was not a bona fide resident of that state, etc. After hearing on the bill and answer, the learned court below determined the relator had never submitted herself to the jurisdiction of the Nevada court, and, as a consequence, the judgment or decree of that court could have no extraterritorial effect. The prayer of the petition was therefore refused.

There appears to be no dispute about the facts that the parties were citizens of Pennsylvania at the time of their marriage and the only common domicile they ever had was within that state; that while both were still residents therein it had been judicially determined the husband had neglected or refused to maintain and support his wife, and an order had been made determining the amount he must thereafter weekly pay for the purposes named. When, with the record in this condition, he left this jurisdiction, he could not by his own act bring about a change in the domicile of his wife. Such cases are exceptions to the general rule that the domicile of the wife follows that of her husband. This being true, it is also clear the court of Nevada acquired no jurisdiction of her person because of the service upon her in Pennsylvania, of a notice of the beginning of a suit against her in Nevada, together with a copy of the libel that had been there filed. No service on her in Pennsylvania of the process of the court of a foreign state could import her into the jurisdiction of such court. Necessarily then no judgment or decree of such court, resting on such service only, could have the extraterritorial effect of impairing or destroying her status as a citizen of Pennsylvania.

In Colvin v. Reed, 55 Pa. 375, Mr. Justice AGNEW said: "But the law of domicile implies that it is the actual domicile of both of the parties, or was, when the

offending party left it. In a proceeding to dissolve a
marriage the parties stand upon a level of rights. When
the injured party seeks a new domicile, and the domicils
are, therefore, actually different, there is no greater
reason why the husband's new domicile should prevail
over the wife's, than that hers should prevail over his.
In this aspect justice requires that neither should draw
the other within the folds of a foreign jurisdiction."
So in Reel v. Elder, 62 Pa. 308, Mr. Justice SHARS-
WOOD, citing with approval the language we have just
quoted, goes on to say: "Clearly, when it is once
determined that a court has not jurisdiction, notice, or
even process duly served, cannot give vitality to the
judgment it may pronounce. It is null and void, at
least, as to any extraterritorial effect." The doctrine
of these cases has been uniformly followed in a long line
of later ones and is now firmly established as the law of
this commonwealth. It is clear then that if the wife
had chosen to ignore the proceeding in Nevada, the
judgment of that court would have been without power
to disturb her personal or property rights as a citizen of
Pennsylvania.

But it has always been true that one sued in a foreign
jurisdiction may voluntarily bring himself within that
jurisdiction, and if he does so and the court had jurisdic-
tion of the subject-matter litigated, the resulting judg-
ment will be conclusive; and full faith and credit must
be given to such judgment in other states by reason of
the provision of the federal constitution on that subject.
What then was the nature of the answer filed by the
wife in the Nevada court and to what extent, if at all,
did she by that act submit herself to its jurisdiction?
She was under no compulsion to file any answer, but
having chosen to do so, she must accept the conse-
quences which the law attaches to such an act. Her
answer covers four and one-half printed pages of the
paper-book. It begins as follows: "And now comes
Sarah E. Parker, the above named defendant, who,

reserving unto herself all rights, because of the imperfections, deficiencies and uncertainties contained in the bill of complaint filed in the above case, makes answer in the following manner, to wit:" She then proceeds to answer each particular paragraph of the libel. She first denies that the plaintiff was a bona fide resident of Nevada and affirms that he was a fugitive from justice of the state of Pennsylvania where a warrant for his arrest was outstanding, and that he was using his residence in Nevada for the sole purpose of prosecuting the action of divorce. She admits in the next paragraph the averments of fact in the second paragraph of the bill of complaint, to wit, the marriage in Pennsylvania, the fact that no children had been born, and that there was no community property. She then proceeds through a number of paragraphs to traverse, separately and distinctly, each and every averment of fact asserted in the libel on which the libelant based his application for a decree. Not content with this, she brings forward certain counter charges against her husband, alleging that he was the cause of the various difficulties referred to in the libel. She concludes her answer thus: "Wherefore the defendant prays that this case be dismissed and that no decree be entered annulling the marriage contract between plaintiff and defendant and restoring each to the status of single persons. The defendant further avers she is without means of employing counsel in Washoe county and asks for such protection as is afforded her under the laws of the state of Nevada, and prays that this Honorable Court will grant her that protection." This answer was signed by her, sworn to before a commissioner of deeds of the state of Nevada in the city of Philadelphia, and was then filed by her in the Nevada court.

It will be observed there is no formal challenge or denial of the jurisdiction of the Nevada court to entertain the libel against the respondent save in so far as that may be predicated upon her allegation that the

plaintiff was not a bona fide resident of the state of Nevada. Clearly that was a question to be determined by the courts of that state, and such averment is not in any proper sense a denial of the jurisdiction of the court over the person of the respondent or such plea to that jurisdiction as would prevent her being bound by any judgment that might be entered. Her answer is full and complete as to the merits of the case and plainly puts in issue in the Nevada court every question of fact asserted in the libel. As stated, her answer is not merely in the nature of a traverse, but it advances additional matters to move the Nevada court to enter a judgment in her favor, and finally she specifically asks, not for the preservation of her status under the laws of the state of Pennsylvania, but for the protection that is afforded to her under the laws of the state of Nevada, and she affirmatively craves of the court of Nevada that protection. If this be not an answer invoking a determination by the courts of Nevada of the case on its merits, we are at a loss to know how to classify it.

The rule of conduct that must be observed by a party litigant in such case in order to be immune from the consequences of a judgment entered by a court in a foreign jurisdiction have been recently and authoritatively laid down by the Supreme Court. In McCullough v. Railway Mail Association, 225 Pa. 118, Mr. Justice MESTREZAT, speaking for that court, declares: "It is not necessary, however, that the defendant should formally appear personally or by counsel to give the court jurisdiction, and to make him amenable to its order, decree or judgment. He will be regarded as having appeared if he give bail to the action, if he file an affidavit of defense to the merits of the cause, if he make defense before arbitrators, etc. . . . By taking either of these steps in an action brought against him, the defendant submits himself to the jurisdiction of the court for the trial of the cause on its merits, and is bound by the judgment.

If a defendant wishes to attack the regularity or sufficiency of the service of the writ or question the jurisdiction of the court without submitting to the jurisdiction for the trial of the cause on its merits, he may do so by entering an appearance de bene esse for the specific purpose. This is not such an appearance as will authorize the court to take any steps affecting the merits of the cause. The appearance is for the single purpose of attacking the regularity of the proceeding and the authority of the court to exercise jurisdiction in the cause. . . . He cannot deny the jurisdiction of the court and at the same time defend the cause upon its merits which implies a submission to its jurisdiction."

In the still later case of Swecker v. Reynolds, 246 Pa. 197, Mr. Justice STEWART said: "It is a rule which obtains in most jurisdictions that any action on the part of the defendant, except to object to the jurisdiction, which recognized the case as in court, will amount to a general appearance. . . . It is obviously just and fair that if a party wishes to insist on the objection that he is not in court he must keep out for all purposes except to make that objection."

These decisions of our court of last resort are, of course, of binding authority on us. If we apply the rule thus laid down to the facts undeniably exhibited by the record before us, we are unable to reach any other conclusion than that, by filing the answer to which we have referred, the defendant voluntarily submitted herself and her cause to the jurisdiction of the Nevada court, and as a consequence its judgment became binding upon her. That being true, by the operation of the federal constitution, the courts of Pennsylvania must give full faith and credit to the judgment of the court of the sister state, which, by the laws of that state, had jurisdiction of the subject-matter and which, by the voluntary act of the defendant, acquired jurisdiction of her person.

Having reached this conclusion, it is beyond our

power to review any question necessarily adjudicated by the Nevada court in reaching a judgment. Manifestly the question whether or not the plaintiff in the action had resided in the state of Nevada for a sufficient length of time to bring his case within the operation of the statutes of that state was a question to be adjudicated by that court. This necessarily follows if the provision of the federal constitution is to be given its due weight. As was said by the Supreme Court of the United States in Laing v. Rigney, 160 U. S. 531: "If the court granting a judgment or decree has jurisdiction, irregularity, or even error, will not authorize a court of a sister state to disregard its decree."

We are of opinion therefore the learned court below fell into error in determining that the decree entered by the court of Nevada had no extraterritorial effect. It should have been determined that the relator and respondent had been divorced as of the date of the decree shown by the exemplified copy of the record. It was our understanding when the case was argued at bar that the appellant had paid all of the weekly installments accruing under the original order down to the date of the decree of divorce. We do not find, however, upon the record anything to warrant us in determining the correctness of that understanding. If they have not been paid, there is ample power to compel their payment, and such payment should be a condition of the final order.

The order or decree of the learned municipal court is reversed and set aside and the record is remitted to that court with direction to discharge the defendant upon payment of the installments in arrear, if any, down to the date of the decree of divorce, unless other legal or equitable cause to the contrary be shown.