## Commonwealth ex rel. Esenwein *v.* Esenwein, Appellant.

**70**

Argued May 3, 1943. Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Sidney J. Watts,* of *Baker & Watts,* with him *Louis F. Silhol* and *Fred C. Houston,* for appellant.

*Jacob Seligsohn,* with him *N. J. Lippard,* for appellee.

OPINION BY KENWORTHEY, J., July 16, 1943:

In 1901, the Supreme Court of the United States held that the jurisdiction of a state court granting a divorce may be inquired into and, if it appear that neither of

the parties had acquired a bona fide domicil in that state at the time of instituting proceedings the decree is open to collateral attack and a recital in the proceedings that such domicil existed may be contradicted. *Bell v. Bell*, 181 U. S. 175, 21 S. Ct. 551; *Andrews v. Andrews*, 188 U. S. 14, 23 S. Ct. 237.

In 1906, it held that a state court, *even of the plaintiff's domicil*, could not render a judgment in divorce that would be entitled to enforcement in other states against a non-resident who did not appear and was not personally served of the process.[1] *Haddock v. Haddock*, 201 U. S. 562, 26 S. Ct. 525.

On December 21, 1942, it overruled *Haddock v. Haddock (Williams v. State of North Carolina*, 317 U. S. 287, 63 S. Ct. 207) ; it held that *if* plaintiff in a divorce proceeding acquires a bona fide domicil in the state which grants him a divorce, the decree is entitled to full faith and credit. This did not in the least impair the authority of the earlier decision in *Bell v. Bell* that domicil, not merely the residence, of one of the parties (there the plaintiff) must be established to support a binding decree where there is substituted service.

Were it not for the misleading press notices and the generally confused discussion of the *Williams* Case emanating, perhaps, from the somewhat extravagant language in the dissenting opinion of Mr. Justice JACKSON,[2] it would scarcely be necessary to point out the limited effect of this decision. We shall discuss it briefly.

Mr. Williams and Mrs. Hendricks had long been domiciled in the State of North Carolina; they were both married to others. In 1940, they went to Las Vegas,

[1] Unless, of course, the state is also the state of the matrimonial domicil. *Atherton* v. *Atherton*, 181 U. S. 155, 21 S. Ct. 544.

[2] For example: "It is not an exaggeration to say that this decision repeals the divorce laws of all states and substitutes the law of Nevada as to all marriages one of the parties to which can afford a short trip there." 63 S. Ct. 219.

**72**

Nevada, and after remaining the few weeks required by Nevada law, were granted divorces, intermarried and returned to North Carolina where they set up house-keeping as husband and wife. They were promptly indicted and convicted of bigamy. They defended by offering in evidence the Nevada decrees. The jury were instructed to find them guilty if either (1) they had not acquired a bona fide domicil in Nevada, or (2) if their matrimonial domicil was in North Carolina and the Nevada divorces had been procured without personal service in Nevada or without an appearance by the defendant-spouse. When the case was argued in the Supreme Court, the state did not seek to sustain the judgment on the ground the domicil was a sham. As said by Mr. Justice DOUGLAS, "...... it[the state] admits that there probably is enough evidence in the record to require the petitioners to be considered 'to have been actually domiciled in Nevada.'" (63 S. Ct. 210). He painstakingly pointed out that the court was not over-ruling *Bell v. Bell.* "If the case had been tried and submitted on that issue [validity of the domicil] only, we would have quite a different problem, as Bell v. Bell indicates." (Page 210). "Domicil of the plaintiff, immaterial to jurisdiction in a personal action is recognized in the Haddock case and elsewhere (Beale, Conflict of Laws, §110.1) as essential in order to give the court jurisdiction which will entitle the divorce decree to extraterritorial effect, at least when the defendant has neither been personally served nor entered an appearance. The findings made in the divorce decrees in the instant case must be treated on the issue before us as meeting those requirements. For it seems clear that the provisions of the Nevada statute that a plaintiff in this type of case must 'reside' in the State for the required period requires him to have a domicil as distinguished from a mere residence in the state. Latterner v. Latterner, 51 Nev. 285, 274 P. 194; Lamb v. Lamb, 57 Nev. 421, 65 P. 2d 872. Hence the decrees

in this case like other divorce decrees are more than in personam judgments. They involve the marital status of the parties. Domicil creates a relationship to the state which is adequate for numerous exercises of state power." (Page 213). "We thus have no question on the present record whether a divorce decree granted by the courts of one state to a resident as distinguished from a domiciliary is entitled to full faith and credit in another state. Nor do we reach here the question as to the power of North Carolina to refuse full faith and credit to Nevada divorce decrees because, contrary to the findings of the Nevada court, North Carolina finds that no bona fide domicil was acquired in Nevada." (Page 215).

The case was sent back, presumably for the very purpose of retrial on the issue whether the Nevada domicils were bona fide. Not only do we think the language of the majority opinion reaffirms *Bell v. Bell,* but if the court had been of opinion that a mere residence for the required period would support a valid decree it would have directed that defendants be discharged.

We now come to a consideration of the facts of the present case.

The parties were married in 1899. They have not lived together since 1919. In 1920, the husband instituted divorce proceedings in Allegheny County and obtained a decree of divorce in 1932 on the ground of indignities. On appeal, this court reversed and dismissed the libel (105 Pa. Superior Ct. 261, 161 A. 425); the order was affirmed by the Supreme Court (312 Pa. 77, 167 A. 350). In 1939, the husband again instituted divorce proceedings in Allegheny County, charging desertion; the lower court again granted a divorce which was reversed by this court (141 Pa. Superior Ct. 604, 15 A. (2d) 735).

In June 1941, the husband went to Las Vegas, Nevada, and on September 8, 1941, was granted a divorce

on the ground that the parties "had lived separate and apart for more than three consecutive years last past and immediately preceding the commencement of this action, without cohabitation," a ground not recognized by our divorce laws. The wife was not served in Nevada and she did not enter an appearance although she was served in Pennsylvania.

The present petition is for the revocation of an order for support made in March 1922 and subsequently modified several times. The basis of the petition for revocation is the Nevada divorce decree. *Com. ex rel. v. Parker,* 59 Pa. Superior Ct. 74. In her answer, the wife contended that the Nevada decree is invalid for two reasons: (1) The court had no jurisdiction because the husband did not establish a bona fide domicil,[3] and (2) res adjudicata. The lower court refused to revoke the order. The husband appealed.

The Nevada decree is prima facie valid and the burden of proving the contrary was on appellee. *Com. ex rel. Cronhardt v. Cronhardt,* 127 Pa. Superior Ct. 501, 193 A. 484. The evidence reveals that appellant had been domiciled in Allegheny County for many years, but that since October 1941 has been living in Cleveland, Ohio. Although the record does not reveal it, we were told at the oral argument that during his brief stay in Nevada he stayed at a hotel. We were also told at the oral argument that we could assume he left Nevada immediately after obtaining his divorce. Under the circumstances, we are of opinion that, in spite of his testimony given in the divorce proceeding that he had

---

[3] The answer does not specifically mention either jurisdiction or domicil; it alleges that the Nevada proceedings "were conceived and executed in fraud both upon the states and courts of Nevada and Pennsylvania." The questions of jurisdiction and domicil were orally presented to us and subsequently discussed at length in a supplemental brief and we shall consider the question as though it had been specifically raised. See *Taggart v. De Fillippo et al.,* 315 Pa. 438, 173 A. 423.

moved to Nevada intending to make Las Vegas his permanent place of residence and had retained that intention up to the date of the hearing (September 8, 1941), his Nevada residence was merely for the purpose of obtaining the divorce; he did not establish a bona fide domicil in the absence of proof of other circumstances which, under our decisions, are regarded as the essentials of domicil. See *Dorrance's Estate*, 309 Pa. 151, 163 A. 303. See also the learned discussion by Judge GORDON in *Meng v. Meng*, 47 D. & C. 429. And until the Supreme Court of the United States gives us a different test of domicil, we apply our own. See Restatement, Conflict of Laws, §10.

In our opinion the Nevada decree was invalid for the reasons just stated and the order of the court will be affirmed. We have not been asked to recognize the Nevada decree on the ground of *comity*. There is, perhaps, some doubt whether we could even if we were so inclined. See Goodrich, Conflict of Laws, §19. It is obviously not a case for the application of the principle. The ground upon which the divorce was granted in Nevada is not a ground recognized by this commonwealth; appellant undoubtedly went there for the purpose of evading our laws under which his previous attempts to obtain a divorce were frustrated; the legitimacy of children is not involved; and there are no other circumstances which at all appeal to us. Compare *Commonwealth v. Custer*, 145 Pa. Superior Ct. 535, 21 A. (2d) 424, where the authorities are discussed at length by President Judge KELLER.

In view of our conclusion, it is unnecessary to discuss at length the question whether the Nevada decree was invalid on the additional ground that, because of the previous decisions of this court against him, appellant's right to a divorce was res adjudicata. Refusal of a divorce on one ground is not a bar to procuring it in another action on a different ground.

*Viney v. Viney*, 151 Pa. Superior Ct. 86, 29 A. (2d) 437; Restatement, Judgments, §74 comment d. Moreover, res adjudicata is a legal defense which must be raised in the initial proceeding or it is deemed to have been waived. *Walter v. Baldwin*, 126 Pa. Superior Ct. 589, 193 A. 146. It cannot be made the basis of a collateral attack on a judgment or decree which is otherwise valid. *Richardson's Estate*, 132 Pa. 292, 19 A. 82; *Fauntleroy v. Lum*, 210 U. S. 230, 28 S. Ct. 641; Restatement, Conflict of Laws, §431. And it would follow that, if the Nevada court had jurisdiction of the subject matter and the parties, appellee's attempt to raise the defense in the court below came too late.

The orders are affirmed, costs in each appeal to be paid by appellant.