ESENWEIN *v.* COMMONWEALTH ex rel.
ESENWEIN.

No. 20.  Argued October 12, 13, 1944.—Decided May 21, 1945.

*Mr. Sidney J. Watts,* with whom *Mr. Fred C. Houston* was on the brief, for petitioner.

*Mr. J. Thomas Hoffman* for respondent.

Mr. Justice Frankfurter delivered the opinion of the Court.

This case involves the same problem as that which was considered in *Williams* v. *North Carolina, ante,* p. 226. There are minor variations of fact, but the considerations which controlled the result in the *Williams* case govern this.

Petitioner and respondent were married in Pennsylvania in 1899. They separated in 1919 but continued to live there. The wife, respondent, obtained a support order in the Pennsylvania courts which was modified from

time to time. Twice the petitioner sought a divorce in Pennsylvania and failed. In 1941 he went to Nevada, arriving at Las Vegas on June 23rd. Six weeks later, promptly within the minimum period allowed by Nevada law, he there filed a suit for divorce. It was granted September 8th. Shortly thereafter, early in October, he left Nevada and took up his residence in Cleveland, Ohio, where he made his home. On February 1, 1943 petitioner filed an application before the County Court for Allegheny County, Pennsylvania, for total relief from the support order. He did so on the basis of the decision in *Williams* v. *North Carolina,* 317 U. S. 287, which had been decided on December 21, 1942. Exemplified copies of the Nevada proceedings, with other relevant evidence, were submitted to the County Court, which, after argument, denied the application. Its decision was affirmed by the Superior Court on the ground that petitioner did not have a *bona fide* domicil in Nevada when he obtained his decree of divorce. 153 Pa. Super. 69, 33 A. 2d 675. This was sustained by the Supreme Court of Pennsylvania, 348 Pa. 455, 35 A. 2d 335, and we then granted certiorari. 322 U. S. 725.

Since, according to Pennsylvania law, a support order does not survive divorce, *Commonwealth* v. *Parker,* 59 Pa. Super. 74; *Commonwealth* v. *Kurniker,* 96 Pa. Super. 553, the efficacy of the Nevada divorce in Pennsylvania is the decisive question in the case. The facts relating to domicil are not essentially different from those set forth in *Williams* v. *North Carolina, ante,* p. 226, except that petitioner, instead of staying in an auto court, lived in a hotel and did not return to Pennsylvania, his domiciliary state before he came to Nevada, but went to Ohio.

The Full Faith and Credit Clause placed the Pennsylvania courts under duty to accord *prima facie* validity to the Nevada decree. The burden is on the litigant who would escape the operation of a judgment decreed in an-

other State. Pennsylvania recognized that burden, but its courts were warranted in finding that the respondent sustained her burden of impeaching the foundation of the Nevada decree on the jurisdictional prerequisite of *bona fide* domicil. The Pennsylvania Supreme Court rightly indicated that if merely the Nevada decree had been in evidence, it was entitled to carry the day. But the Supreme Court found that on the entire showing there was convincing countervailing evidence to disprove petitioner's intention to establish a domicil in Nevada. The Pennsylvania courts have viewed their Constitutional duty correctly. It is not for us to retry the facts, and we cannot say that in reaching their conclusion the Pennsylvania courts did not have warrant in evidence and did not fairly weigh the facts.

Petitioner makes a subsidiary claim which need not detain us long. He asserts that he had no notice that the Nevada domicil was to be put in issue, and that therefore it was unfair to decide that question on this record. He points to the fact that for its decision the County Court relied on the Pennsylvania denials of divorce as *res judicata,* whereas the appellate courts rested their decisions on the issue of domicil. Since the record does not support the basis of this claim, we are relieved from considering its legal significance. The issue of domicil was appropriately pleaded in defense, it was contested at the trial, and before the Superior Court petitioner filed a supplemental brief on that issue. A claim of deprivation of opportunity to be heard on the question of domicil before the Pennsylvania courts is without merit.

*Affirmed.*

Mr. Justice Douglas, concurring.

I think it is important to keep in mind a basic difference between the problem of marital capacity and the problem of support.

We held in *Williams* v. *North Carolina,* 317 U. S. 287, that a Nevada divorce decree granted to a spouse domiciled there was entitled to full faith and credit in North Carolina. That case involved the question of marital capacity. The spouse who obtained the Nevada decree was being prosecuted in North Carolina for living with the one woman whom Nevada recognized as his lawful wife. Quite different considerations would have been presented if North Carolina had merely sought to compel the husband to support his deserted wife and children, whether the Nevada decree had made no provision for the support of the former wife and children or had provided an amount deemed insufficient by North Carolina. In other words, it is not apparent that the spouse who obtained the decree can defeat an action for maintenance or support in another State by showing that he was domiciled in the State which awarded him the divorce decree. It is one thing if the spouse from whom the decree of divorce is obtained appears or is personally served. See *Yarborough* v. *Yarborough,* 290 U. S. 202; *Davis* v. *Davis,* 305 U. S. 32. But I am not convinced that in absence of an appearance or personal service the decree need be given full faith and credit when it comes to maintenance or support of the other spouse or the children. See *Pennoyer* v. *Neff,* 95 U. S. 714. The problem under the full faith and credit clause is to accommodate as fully as possible the conflicting interests of the two States. See *Magnolia Petroleum Co.* v. *Hunt,* 320 U. S. 430, 447 (dissenting opinion). The question of marital capacity will often raise an irreconcilable conflict between the policies of the two States. See *Williams* v. *North Carolina, supra.* One must give way in the larger interest of the federal union. But the same conflict is not necessarily present when it comes to maintenance or support. The State where the deserted wife is domiciled has a deep concern in the welfare of the family deserted by the head of the household. If he is required to support his former wife, he is not made a bigamist and

the offspring of his second marriage are not bastardized. In that view Pennsylvania in this case might refuse to alter its former order of support or might enlarge it, even though Nevada in which the other spouse was domiciled and obtained his divorce made a different provision for support or none at all. See Radin, The Authenticated Full Faith and Credit Clause, 39 Ill. L. Rev. 1, 28.

MR. JUSTICE BLACK joins in this opinion.

MR. JUSTICE RUTLEDGE, concurring.

In accordance with the views which I have expressed in *Williams* v. *North Carolina, ante,* p. 226, I do not think full faith and credit have been given by the Pennsylvania courts to the Nevada decree in this case. But upon the basis of the Court's decision in that case, made applicable also in this one, I concur in the result. In doing so, however, it is appropriate to indicate my agreement with the views expressed in the concurring opinion of MR. JUSTICE DOUGLAS that the jurisdictional foundation for a decree in one state capable of foreclosing an action for maintenance or support in another may be different from that required to alter marital status with extraterritorial effect.