**GAGE v. GAGE.**
**Civ. No. 147–48.**

United States District Court
District of Columbia.
March 29, 1950.

---

Dennis Collins, Washington, D. C., attorney for plaintiff.

Joseph A. McMenamin, Washington, D. C., attorney for defendant.

CURRAN, District Judge.

This is a suit for maintenance brought by Angela Gage against her husband, Vincent Gage. The suit was filed January 13, 1948 at a time when the plaintiff was residing in Italy. The plaintiff and the defendant were married in March, 1920, in Italy, and three children were born of the marriage. Plaintiff came to the United States, arriving in Washington, D.C., March 30, 1949. The day following her arrival in Washington she attempted to effect a reunion with her husband, which was refused by the defendant, and on the same day, March 31, 1949, the defendant left for Reno, Nevada. The defendant arrived in Reno, Nevada, April 15, 1949 and remained there until July 1, 1949, on which date he received the divorce, and on the same day, July 1, 1949, he left Reno and went to St. Petersburg, Florida, where he has since resided.

Prior to the instant suit the defendant, on February 1, 1946, filed a complaint for an absolute divorce in this court on the grounds of voluntary separation. At the conclusion of that case, Judge McGuire dismissed the complaint and found as a fact that there had been no voluntary separation between the parties.

The defendant has interposed as a defense to the present suit a divorce decree of the Second Judicial District Court of the State of Nevada.

■ Ordinarily a valid decree rendered by a court of competent jurisdiction is entitled to recognition in another state. It is well settled, however, that a decree is not entitled to such recognition, either under the full faith and credit clause, U.S. Const. Art. 4, § 1, or upon principles of comity, if it is void for want of jurisdiction in the court which rendered it, either as to the subject matter generally or because of lack of the requisite domicil in the state. Nelson, Divorce and Annulment, 2d Ed. §

33.31; Andrews v. Andrews, 188 U.S. 14, 23 S.Ct. 237, 47 L.Ed. 366, affirming 176 Mass. 92, 57 N.E. 333.

■ If a divorce decree is to be accorded full faith and credit in the courts of a sister state, it is necessary that the court granting the decree have proper jurisdiction over the divorce proceedings. Williams v. North Carolina [II] 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577, 157 A. L.R. 1366, per Murphy, J., concurring. It follows that a decree by a court not having jurisdiction of the subject matter or the parties does not come under the protection of the full faith and credit clause. In other words, a decree is not entitled to recognition under the full faith and credit clause where the court did not have jurisdiction over the parties or over the matrimonial domicil. Thompson v. Thompson, 89 N.J.Eq. 70, 103 A. 856. As a result, no other court is bound to recognize and enforce it. Andrews v. Andrews, supra. A divorce decree may be collaterally attacked where the court of the foreign state had no jurisdiction to render the judgment. Jurisdiction is dependent upon the domicil of the plaintiff in the state for the length of time prescribed by the statute and upon the observance of the requirements as to procedural due process. Williams v. North Carolina [I] 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279, 143 A.L.R. 1273; Hughes v. Hughes, 211 Ky. 799, 278 S.W. 121; Kenner v. Kenner, 139 Tenn. 211, 201 S.W. 779, L.R.A.1918E, 587. The question as to the domicil or the residence of the parties in the forum state is the real consideration in determining whether a decree is entitled to recognition in a sister state. "The domicil of one spouse within a State gives power to that State * * * to dissolve a marriage wheresoever contracted." Williams v. North Carolina [II] supra [325 U.S. 226, 65 S.Ct. 1095]. In that case the court also said: "Domicil implies a nexus between person and place of such permanence as to control the creation of legal relations and responsibilities of the utmost significance." It is the underlying element upon which jurisdiction is founded. The second Williams case said further:

"Under our system of law, judicial power to grant a divorce—jurisdiction, strictly speaking—is founded on domicil."

■■ "The domicil relied upon to support a divorce decree, though it may seemingly be of brief duration, must be an authentic, bona fide, genuine, real or true domicil and not one that is merely assumed, ostensible, pretended or simulated." Nelson, Divorce and Annulment, 2d Ed. § 33.33. Domicil consists in more than mere physical presence. Two circumstances must concur: (1) residence, and (2) intention to remain there and make it a home permanently or indefinitely. Nelson, Divorce and Annulment, 2d Ed. § 33.33; Jardine v. Jardine, 291 Ill.App. 152, 9 N.E. 2d 645; Hollingshead v. Hollingshead, 91 N.J.Eq. 261, 110 A. 19; State v. Williams, 224 N.C. 183, 29 S.E.2d 744; Commonwealth ex rel. Esenwein v. Esenwein, 348 Pa. 455, 35 A.2d 335, affirmed 325 U.S. 279, 65 S.Ct. 1118, 89 L.Ed. 1608, 157 A.L.R. 1396. The intention required for the acquisition of a domicil of choice is an intention to make a home in fact. Melnick v. Melnick, 154 Pa.Super. 481, 36 A.2d 235. In the same case the court held that residence within the Nevada divorce statute is a settled or fixed abode, indicating permanency or at least an intention to remain for an indefinite time. It is made up of the physical act of abode and the intention of remaining. In this connection we might say that at the very least there must be no intention to live somewhere else. Furthermore, there must be no intention to leave as soon as a divorce decree can be obtained. Morris v. Gilmer, 129 U.S. 315, 9 S.Ct. 289, 32 L.Ed. 690; Jenkins v. Jenkins, 239 Ala. 141, 194 So. 495. In Commonwealth ex rel. Esenwein v. Esenwein, supra, the court held that while the six weeks residence required by the Nevada statute was established, the husband's intention to leave there immediately after obtaining the divorce prevented a finding that his domicil was in good faith. As Nelson puts it: "These requirements are not met by becoming a mere sojourner, vacationer, or visitor in a state, staying in an auto court or stopping at a hotel or boarding house for the purpose of creating a colorable right to maintain a divorce action."

A person may transfer his domicil from one state to another and the question isn't why a new domicil was created but whether a bona fide domicil was actually and genuinely established in the forum state. This means an abandonment of the domicil in the state where the party had resided and the creating of a residence in the state of the new domicil, together with the intention of remaining there permanently or for an indefinite period of time.

■ A divorce decree based on a bona fide domicil and procedural due process is valid and entitled to recognition in other states. However, no new domicil is established where a person goes to another state for the sole purpose of obtaining a divorce and has no intention of making his home there but intends to remain there no longer than necessary and return to the state from whence he came, or to go to another state as soon as his purpose is accomplished. Under these circumstances the court of the foreign state has no jurisdiction to render a divorce decree. In the Williams case petitioners returned to their home in North Carolina. In the Esenwein case, instead of returning to his home state of Pennsylvania, petitioner went to Ohio.

In Evans v. Evans, 80 U.S.App.D.C. 133, 149 F.2d 831, the court followed the Williams and Esenwein cases and held that a divorce decree rendered by a Nevada court upon substituted service may be challenged in the District of Columbia on the ground that the moving party in the Nevada proceeding was not a bona fide domiciliary in that jurisdiction, notwithstanding the full faith and credit clause of the Federal Constitution. In Gullet v. Gullet, 174 F.2d 531, 533, the United States Court of Appeals for the District of Columbia Circuit said: "The evidence of the invalidity of the Florida judgment amply justified the District Court in refusing to accord it full faith and credit. The court therefore had power to order the payment of permanent maintenance." In that case the District Court had found that the Florida divorce was

obtained by appellant's fraudulent representation to that court of a bona fide residence in Florida, a false representation of a jurisdictional fact. The District Court having demonstrated that the Florida judgment was not entitled to full faith and credit, proceeded to award permanent maintenance and counsel fees.

In Williams v. North Carolina, [II], supra, the court said: "If the jury found, as they were told, that petitioners had domicils in North Carolina and went to Nevada 'simply and solely for the purpose of obtaining' divorces, intending to return to North Carolina on obtaining them, they never lost their North Carolina domicils nor acquired new domicils in Nevada."

A statutory requirement of a bona fide residence is held to mean something more than an abode more or less permanent, and to denote a "residence" within the legal meaning of the word "domicil"; that is, an abode animo manendi, a place where a person lives or had his home to which, when absent, he intends to return, and from which he has no present purpose to depart. 17 Am.Jur. 279; Carpenter v. Carpenter, 30 Kan. 712, 2 P. 122, 46 Am.Rep. 108; McClintock v. McClintock, 147 Ky. 409, 144 S.W. 68, 39 L.R.A.,N.S., 1127; Winans v. Winans, 205 Mass. 388, 91 N.E. 394, 28 L.R.A.,N.S., 992; Bechtel v. Bechtel, 101 Minn. 511, 112 N.W. 883, 12 L.R.A.,N.S., 1100; King v. King, 74 N.J.Eq. 824, 71 A. 687, 135 Am.St.Rep. 731; De Meli v. De Meli, 120 N.Y. 485, 24 N.E. 996, 17 Am. St.Rep. 652; Miller v. Miller, 88 Vt. 134, 92 A. 9, L.R.A.1915D, 852.

The public is directly interested in the institution of marriage, which is subject to proper regulation and control by the state in which it exists. The public policy has always been to foster and protect it, to make it permanent, to encourage the parties to live together, and to prevent separation. It is safe to say that this policy finds expression in probably every state in this country in the various legislative enactments designed to prevent the breaking of the marriage ties for trivial purposes. As the Supreme Court once said in speaking of marriage: "The relation once formed, the law steps in and holds the parties to various obligations and liabilities. It is an institution, in the maintenance of which in its purity the public is deeply interested, for it is the foundation of the family and of society, without which there would be neither civilization nor progress." Maynard v. Hill, 125 U.S. 190, 8 S.Ct. 723, 729, 31 L.Ed. 654.

Many courts and eminent writers on the subject have said that an action for divorce is really a triangular proceeding to which the husband and wife and the state are the parties. In a divorce suit the state becomes in a sense a party, not necessarily to oppose, but to make sure that a divorce will not prevail without sufficient and lawful cause shown by the real facts. Both the policy and the letter of the law concur in guarding against collusion and fraud. 17 Am.Jur. 155.

In the instant case, did the defendant, Vincent Gage, acquire a bona fide, genuine and true domicil in the state of Nevada, or was his domicil merely simulated, assumed, pretended? Did he intend to make Nevada his residence and to remain there and make a home permently or for an indefinite period? Did he become a mere sojourner, vacationer or visitor in Nevada, stopping at a boarding house or tourist home, for the purpose of creating a colorable right to maintain his divorce action? His wife had arrived in the United States on March 30, 1941. The following day, March 31st, she arrived in Washington, D. C. and endeavored to be reunited with her husband. On that same day the defendant left the District of Columbia and went to Reno, Nevada, arriving there on April 14, 1949. The certified copy of the decree of divorce in the Second Judicial District Court of the State of Nevada in and for the County of Washoe states: "it appearing to the satisfaction of the court that an affidavit for publication of summons and an order for publication of summons or substituted service outside the state of Nevada were duly filed herein, and that an affidavit of service of said summons attached to a certified copy of the complaint

on the said defendant on May 31, 1949, at Washington, D. C. was made and filed herein." This clearly indicates that the defendant filed his suit for divorce in Nevada immediately upon the expiration of six weeks. The cause came on for trial on July 1st, 1949, and on that date the court granted the defendant his divorce. On the very same day, July 1st, 1949, the defendant left Reno, Nevada and went to St. Petersburg, Florida, where he has since resided. While in Nevada the defendant was not employed, had no bank account, paid no taxes, lived in a boarding house or tourist home, and did not vote or register to vote. These facts, in my opinion, clearly show that the defendant, Vincent Gage, was never domiciled in the state of Nevada, and that he had no intention of establishing a domicil in the state of Nevada. It is clear to me that his domicil was simulated and that he went to Nevada solely for the purpose of obtaining a divorce, and left the state on the very day that his divorce was granted. In other words, immediately upon the accomplishing of the purpose for which he went to Nevada he left. There is no question but that the defendant practiced a fraud upon the Nevada court.

To allow the defendant, under the circumstances of this case, to interpose the divorce decree as a defense to this suit for maintenance would be a sham and a mockery, and this court holds that the Nevada decree is not entitled to full faith and credit because the defendant did not acquire a bona fide, genuine and true domicil in Nevada. He established a mere simulated and pretended domicil for the sole purpose of obtaining a divorce, with no intention of making a home permanently or for an indefinite period of time.

The court, therefore, will award permanent maintenance to the plaintiff in the sum of Seventy-five dollars ($75.00) per month and counsel fee of Two Hundred Dollars ($200.00) to plaintiff's attorney. The findings of fact and conclusions of law having been stated in this opinion, no formal findings will be necessary. Counsel for the plaintiff will prepare the appropriate order not inconsistent with this opinion.