**DAVIS, Plaintiff, v. DAVIS, Jr., Defendant.**

Common Pleas Court, Fayette County.

No. 22567.  Decided January 28, 1959.

William M. Junk, Junk & Junk, Washington C. H., for plaintiff.
Frank W. Thoroman, Sabina, for defendant.

304

**OPINION**

By CASE, J.

On November 14, 1958, plaintiff filed her petition herein seeking a decree of divorce, alimony, custody, and support for the two minor children of the parties.

On the same date, plaintiff filed a motion for temporary alimony and support for said minor children during the pendency of this action. Said motion came on to be heard on December 1, 1958, at which time plaintiff and defendant were present and represented by counsel.

At said hearing, plaintiff testified she and the two minor children had been living with her mother; that she and defendant had been separated for three years; that, during the pendency of this action, a certain minimum of funds were reasonably necessary to pay for rent, food, clothing, public utility service, fuel and medical expenses for herself and said children; that, within the past three years, it had been necessary for her to apply for and receive certain assistance from Aid for Dependent Children; that, when employment was available, she had worked at a shoe factory and earned as much as thirty-five dollars per week; that, when unemployed, she had received approximately twenty to twenty-two dollars per week unemployment compensation; that certain proceedings had been instituted in the Juvenile Court of Fayette County, Ohio; and, by reason thereof, that defendant was presently under an order of that court to pay twenty dollars per week for the support of said minor children and said payments had not been regularly made by defendant and were partially in arrears.

At said hearing, defendant testified that he was a self-employed carpenter and was capable of earning seventy-five to eighty dollars per week when the weather was favorable; that he left Ohio and went to California in July, 1955; that at first he had resided in California and some months later resided with a friend, rent free, in Mexico for several weeks in 1956, although maintaining his mailing address and continuing to work in San Diego; that, in July of 1956, while so residing in Mexico, he filed for a divorce in a Mexican court, and was granted a decree of divorce by said court on July 28, 1956; that, after said decree had been granted, he married his present wife who is expecting the birth of their child within a few days; that he and his present wife left California and established their present home at Sabina, Ohio, in December, 1957.

A copy of said Mexican decree of divorce was admitted into evidence over the objection of plaintiff's counsel, and the translation thereof reads as follows:

"THE CITIZEN MANUEL ORTIZ CRUZ, SECRETARY OF THE FIRST

INSTANCE COURT OF PUENTE DE IXTLA, THIRD JUDICIAL DISTRICT, STATE OF MORELOS, REPUBLIC OF MEXICO, _____

"CERTIFIES:—That in the expedient pertaining to the suit of necessary divorce instituted before this Court by Mr. RALPH E. DAVIS, JR., against his wife, Mrs. ALDENA ROBERTS DAVIS, there is a sentence duly executed, transcribed literally as follows: _____

"SENTENCE:—Puente de Ixtla, Morelos, July 21st of nineteen hundred and fifty six._____SEEN, to resolve in definitive the proceedings of the present suit of necessary divorce; and, _____APPEARING FIRST:—That submitting expressly to the competence and jurisdiction of this Court, Mr. RALPH E. DAVIS JR., through his juridical empowered duly accredited Mr. Attorney ALBERTO LASCURAIN, filed a suit of necessary divorce against his wife, Mrs. ALDENA ROBERTS DAVIS, and exposing; That the parties in this action contracted marriage in Washington C. H., Ohio, United States of America, on the 12th day of March of nineteen hundred and fifty, as proven by testimonial information rendered; having procreated two children named TERRANCE LEE DAVIS, who is actually four years old and VICTORIA JEAN DAVIS, who is one year and seven months of age, both minors will remain in the custody of their mother; and that no community property was acquired from this matrimony; it was stated by the plaintiff that the defendant made her husband a victim of mental cruelty, reason for which the parties have been separated for one year; and concluded requesting that once all the legal requirements be complied with, sentence be dictated dissolving the marriage bonds in question. _____

"APPEARING SECOND:—That the suit was entered in this Court, and that the defendant was duly summoned in the form prescribed by the Law, and as she did not answer within the term granted, the suit was considered as uncontested and opened on trial, in which the plaintiff submitted as evidence the Instrumental, the Documental and Confessional proofs, which were duly qualified and accepted as confessed in the positions that were articulated to the defendant; thereafter the parties were summoned for the plaintiff's deposition and afterwards for sentence; and,

"CONSIDERING FIRST:—That the competence and jurisdiction of this Court to hear and render judgment in the present divorce action was duly established with the express submission of the plaintiff to its jurisdiction, in conformity with what it is prescribed by Chapter I, Title II of the Code of Civil Procedures in force.

"CONSIDERING SECOND:—That the personality of the juridical empowered of the plaintiff was duly accredited with the Power of Attorney that was vested on him, and that the existence of the marriage contract which dissolution is requested, was also established with the testimonial information rendered. _____

"CONSIDERING THIRD:—That the present divorce suit is based on the grounds of mental cruelty, for which the parties have been separated for one year, and which constitutes grounds for divorce in conformity with fraction VIII of article 360 of the Civil Code in vigor in the State; therefore the contention was duly established with the evi-

dence submitted and with the tacit confession of the defendant, who was held as confessed in the context of the positions that were articulated; thus the marriage bonds in question should be severed with all its legal effects, remaining both parties in legal aptitude to contract new nuptials. In view of the foregoing, and with further basis on article 120 of the Political Constitution of the State and 597, 599, 600, 602 and 609 of the Code of Civil Procedures in force, it is hereby ruled:

"FIRST:—This case of divorce has proceeded legally; the plaintiff proved his contention and the defendant did not interposed any objections.

"SECOND:—It is hereby adjudged and decreed severed with all its legal effects, the marriage contract celebrated between RALPH E. DAVIS JR., and ALDENA ROBERTS DAVIS, in Washington, C. H., of Ohio, United States of America, on the 12th day of March of 1950.

"THIRD:—Therefore both parties will remain hereby in legal aptitude to contract new nuptials, once this judgment is duly executed.

"FOURTH:—The minor children of this matrimony will remain hereby in the custody of their mother.

"FIFTH:—Let it be notified.

Thus it was adjudged and decreed by the Citizen Attorney Ricardo Anzures, Judge of First Instance of the Third Judicial District of the State, before his secretary that authorizes.—I testify. R. Anzures. Manuel Ortiz Cruz. Signatures.

" 'Puente de Ixtla, Morelos, July 28th of nineteen hundred and fifty six.

"As the legal term has elapsed without interposing the recourse of appeal to this sentence, according to certification of the Secretaryship, and in conformity with articles 621 fraction II, 622 and 623 of the Code of Civil Procedures in vigor, said sentence is hereby declared duly executed and held valid; thus certified copy be issued to the interested party, as requested. It was adjudged and signed by the Citizen Judge. I testify. R. Anzures. Manuel Ortiz Cruz. Signatures.' "

"IN COMPLIANCE WITH THE ABOVE EXPRESSED DEGREE, THIS TRUE AND EXACT COPY OF ITS ORIGINALS IS ISSUED IN TWO SHEETS DULY ATTESTED AND AUTHORIZED IN THIS CITY OF PUENTE DE IXTLA, STATE OF MORELOS, REPUBLIC OF MEXICO, ON THIS 28TH DAY OF JULY OF NINETEEN HUNDRED AND FIFTY SIX.

THE SECRETARY:

OFFICIAL SEAL.
signature                    (signature)
MANUEL ORTIZ CRUZ."

At the conclusion of all the testimony, defendant's counsel orally moved the court for an order dismissing plaintiff's motion for such temporary alimony and support. Said oral motion to dismiss is directed to and attacks the jurisdiction of the court to determine and adjudicate all issues arising out of and related to plaintiff's action herein for divorce, alimony, custody and support.

Plaintiff by argument and brief contends that defendant has not obtained a valid Mexican divorce and, in support of this contention,

cites **Bobala v. Bobala, 33 Abs 440, 68 Oh Ap 63, 20 O. O. 45, 33 N. E. 2d 485.**

Defendant contends by argument and brief that he obtained a valid Mexican divorce decree and cites **In Re Estate of Walter C. Sayle, 37 O. O. 167, 51 Abs 33, 80 N. E. 2d 221.**

Plaintiff in effect contends that defendant's acts and conduct, in leaving Ohio, obtaining a Mexican divorce decree and returning to Ohio, are sufficiently similar to the Bobala case, in character, degree and extent, to warrant and justify this court in following the rules of law applied by the court of appeals in that case.

This court is fully in accord with and subscribes to the reasoning and decision arrived at by the court of appeals in the Bobala case, supra, in the light of the facts and circumstances of record therein, but this court must observe and recognize what appear to have been extremely pertinent and controlling factors in that court's adjudication of the matter. Bobala's previous filing for a divorce in the Common Pleas Court of Mahoning County and its subsequent dismissal. His later violation of an injunction issued out of the same court in an effort to restrain him from further prosecuting his divorce proceedings in the Mexican court, which, when coupled with his application for and receipt of a leave of absence from his employer, together with his return from Mexico and resumption of his former employment within the time limit of his leave, appear to have been decisive factors considered by that court of appeals in its decision.

In the case at bar, no such overt acts and conduct appear of record herein, and the absence thereof clearly distinguish these two factual situations to such a degree and extent as to reasonably indicate and show that the rules of law pronounced in the Bobala case, supra, are not applicable and should not be applied in the light of the facts of record in the instant case.

This court is also fully in accord with and subscribes to the reasoning and decision arrived at by Judge Brewer (In Re Estate of Walter C. Sayle, supra), and the subsequent decision of the court of appeal written by Judge Skeel (**Sayle, Estate of, In Re, 51 Abs 46, 80 N. E. 2d 229**) affirming the lower court.

In their respective opinions, Judge Brewer and Judge Skeel take notice of and make reference to Williams v. North Carolina, 325 U. S. 226, and recognize the consideration which has been given to those facts and circumstances surrounding the conduct of the party obtaining such questioned divorce when such conduct is relied upon to show and establish the failure of the foreign court to obtain jurisdiction. In addition to considering the rule of law pronounced by the Supreme Court of the United States in the Williams case, supra, to the effect that the burden of proof of undermining the verity of a divorce decree in a foreign forum rests heavily upon the assailent, Judge Brewer recognizes other factors which did not appear to be present and therefore were not before the high court in the Williams case.

At **page 171 (37 O. O. 167), 51 Abs 33** at **page 42,** Judge Brewer states in part as follows:

"In the Williams and Smerda cases the actions challenging the

validity were filed shortly after the decrees of divorce were granted. In the instant case action was not commenced until twenty years later.

"In the Williams case, a criminal prosecution, not involving the property rights of individuals, the jury decided that it was not the parties' intention to remain residents of Nevada.

"In the Smerda case, the court determined from all the testimony that it was not the intention of Smerda to remain in Nevada.

"In the instant case there is no evidence whatsoever that Dr. Miller did not intend to remain in Nevada.

"This court feels impelled, as was Mr. Justice Black, in his dissenting opinion in the Williams case, supra, 'to protest as vigorously as I can' against the decision in the Williams case, and hence, to that in the Smerda case. It is not to the finding on the specific sets of facts in each of these cases that this court disagrees (because as has so often been said, bad facts make for bad law), but to the application of the announced principle of law relative to foreign divorces generally.

"Neither the Williams nor the Smerda cases make any exceptions as to time, estoppel, or take into consideration the persons involved, or the ultimate effects of the findings. To follow these holdings blindly would be to place untold thousands in the position of bigamists, mistresses and illegitimates, ***"

And, on page 173 (37 O. O. 167), 51 Abs 33 at page 45, Judge Brewer concludes as follows:

"This court recognizes the general rule of law that the full faith and credit rule is only applicable where the foreign court rendering the judgment has jurisdiction, but the time is not yet here when the full faith and credit rule has sunk to no faith and discredit.

"This court does not condone 'quickie' divorces where persons seek to cast aside spouses and liabilities with complete abandonment, nor suggests that in no case the question of intent be not questioned. However, neither is this court willing to subscribe to a rule that every foreign divorce be open to examination by all persons without regard to time, equities, estoppel, or remote interest. There must be a middle road. The history of our law discloses that where situations appear hopeless a solution is always found.

"Were it within the province of any court to lay down rules that would protect the property rights and the social existence of literally millions of persons who live today under a state of doubt and possible insecurity, in view of the law as it has been announced, it would be urged that:

"First: No action to set aside a divorce decree of a sister state shall be maintained except by the parties to the original marriage. This would prevent the state, or any person other than the party to the original marriage, from seeking to avoid the divorce.

"Second: That any action to set aside the divorce decree of a sister state must be filed within one year after actual knowledge of the divorce is received by the spouse.

"Third: No action to set aside a divorce of a sister state shall be entertained where the avoidance of the decree will affect the legitimacy

of children. It is the policy of the court to declare offsprings legitimate rather than illegitimate.

"Fourth: No action to set aside a foreign divorce shall be entertained where the defendant has subsequently remarried. The reason is self-evident that no one should be permitted to act upon the faith of a foreign divorce decree, and later be permitted to challenge it.

"In view of the testimony and mindful of the decisions in the case of Smerda v. Smerda, and Williams v. North Carolina, upon which the exceptors rely, this court can come to but one conclusion, that the exceptors have not sustained 'the burden of undermining the verity which the Nevada decrees import.'

"The court, therefore, grants the motion of the administratrix to dismiss the motion of the exceptors."

This court, coming now to consider all of the testimony and evidence produced in the case at bar concerning defendant Davis' residence and domicile in Mexico and the reasonable inferences which may be drawn therefrom and also considering the credibility of Mr. Davis, his candor and demeanor upon the witness stand and any and all conflicting statements made by him in the course of his testimony, is compelled to conclude that the plaintiff herein has failed to sustain the burden of undermining the verity which the Mexican decree imports, and therefore must find that the facts and circumstances of record herein are sufficient to show that the Mexican court had acquired such jurisdiction of the defendant and the subject matter so as to make and issue a valid order dissolving the marriage contract theretofore existing between the parties to this action.

And, while the Mexican decree purports to award custody of their children to the plaintiff herein, this court is also compelled to observe there is undisputed evidence of record which clearly shows that neither the plaintiff nor said children were ever within the jurisdiction of the Mexican court, and that plaintiff and said children have continuously resided together in the State of Ohio.

Since the decision of the Supreme Court of the United States in May v. Anderson, 345 U. S. 528, 97 L. ed. 1221, 73 S. Ct. 840, this court has construed the force and effect of that decision to be that a mother's rights to custody of and support for her children are in the nature of personal rights which cannot be cut off by an ex parte decree. So, in so far as the Mexican decree purports to award custody and to ignore support for said minor children, this court is compelled to conclude that such portion of said Mexican decree is void ab initio for lack of jurisdiction over the person of the plaintiff and her two children.

It is also noted that the Mexican decree did not purport to consider or determine any award of alimony to Mrs. Davis, the plaintiff herein.

In the case of **Hasselschwert v. Hasselschwert, 103 Oh Ap 202**, the court of appeals held, in part, as follows:

"1. A decree of divorce does not bar a subsequent action for alimony; the right to alimony continues until adjudicated."

And, in the case of **Armstrong v. Armstrong, 162 Oh St 406**, the Supreme Court of Ohio held as follows:

"1. A divorce decree obtained against a nonresident defendant solely upon service by publication, where such service is authorized in the state granting the divorce, is entitled, under Section 1, Article IV of the Constitution of the United States, to full faith and credit elsewhere, providing such service meets the requirements of due process and the plaintiff at the time of instituting the divorce proceeding was legally domiciled in the state granting the divorce.

"2. Such a divorce decree in favor of a husband, based solely on service by publication on the wife residing in another state, does not, as to a denial of alimony therein, operate extraterritorially and is not entitled to full faith and credit in such other state."

The opinion in that case was written by Judge Zimmerman, and it is noted that, in its reasoning, the court cites the Williams case, supra, as well as May v. Anderson, supra, and also cites a case involving a Cuban decree of divorce. Beginning on page 410 (162 Oh St), Judge Zimmerman sets forth the following reasoning and authorities:

"The rule of general acceptance is that a divorce decree obtained against a nonresident defendant solely upon constructive service, if such service is authorized in the state granting the divorce, is entitled to full faith and credit elsewhere, providing such constructive service meets the requirements of due process and the plaintiff at the time of instituting the divorce proceeding was legally domiciled in the state granting the divorce. Williams v. North Carolina, supra; annotation, 28 A. L. R. (2d), 1306

"But may a divorce decree secured by a husband even in the so-called matrimonial domicile, where service of summons on the wife, then residing in another state, has been by publication only, deny the wife any right to alimony, so that such denial must be recognized as conclusive in another jurisdiction? We do not think so.

"We would approve the rule that such a decree as it concerns the denial of alimony to the wife is not entitled to full faith and credit in another state. A decree of that kind is one in personam and requires either an appearance by, or lawful personal service on, the wife, in order to have extraterritorial effect. In other words, in a situation of the kind under discussion, that part of the decree granting a divorce may be immutable, but that part which purports to fix alimony rights is not, and alimony may be the subject of adjudication in the court of another state at a future time. What has been said finds sanction in the Ohio cases of Cox v. Cox, 19 Oh St 502, 2 Am. Rep., 415; Doerr v. Forsythe, Admx., 50 Oh St 726, 35 N. E. 1055, 40 Am St. Rep. 703; Weidman v. Weidman, 57 Oh St 101, 103, 48 N. E. 506, 507; Bay v. Bay, 85 Oh St 417, 426, 427, 98 N. E. 109, 110; and Slapp v. Slapp, 143 Oh St 105, 54 N. E. (2d), 153.

"Although not directly in point from a factual standpoint, we believe the following cases also lend support to the position we have taken; Estin v. Estin, 334 U. S., 541, 92 L. Ed., 1561, 68 S. Ct., 1213, 1 A. L. R. (2d), 1412; and May v. Anderson, 345 U. S., 528, 97 L. Ed., 1221, 73 S. Ct., 840. And see the concurring opinion of Mr. Justice Douglas in Esenwein v.

Pennsylvania, ex rel. Esenwein, 325 U. S., 279, 89 L. Ed., 1608, 65 S. Ct., 1118, 157 A. L. R., 1396.

"In the case of Pawley v. Pawley (Florida), 40 So. (2d), 464, 28 A. L. R. (2d), 1358, certiorari denied, 340 U. S., 866, 95 L. Ed., 632, 71 S. Ct., 90, the husband secured a Cuban decree of divorce against wife, a resident of Florida, on the ground of desertion, which constitutes a ground for divorce in Florida. Personal service of notice of the action was made on the wife in Florida. The Supreme Court of Florida recognized the Cuban decree as valid under the principles of comity but held that the Cuban court did not and could not pass upon the right of the wife to alimony since no personal jurisdiction had been secured over her, and that, therefore, she was not barred from maintaining an action for alimony in Florida.

"Consequently, we are in agreement with the judgments of both the lower courts herein. Armstrong's Florida divorce decree dissolved the marriage relation between him and his wife, and Mrs. Armstrong could not thereafter successfully maintain an action in divorce for herself in this state; but the Florida court had no jurisdiction over the person of Mrs. Armstrong and that court could not by its decree effectively preclude her from obtaining an alimony award in Ohio."

Therefore, in the light of all the evidence presently of record and the authorities hereinabove cited, this court makes the following finding of facts and conclusions of law:—

1. That defendant left his wife and two children and his Ohio matrimonial domicil in July, 1955;

2. That, within the first six months of 1956, defendant became domiciled in Mexico, even though he continued to be employed in California;

3. That, on July 21, 1956, defendant instituted an action for divorce in the Civil Court of First Instance, State of Morelos, Republic of Mexico, and obtained a final decree of divorce from said Mexican court on July 28, 1956;

4. That, immediately thereafter, defendant became a resident of California and married his present wife;

5. That, on April 15, 1957, defendant appeared before the Juvenile Court of Fayette County, Ohio, upon the prosecution of a nonsupport complaint by his first wife who is the plaintiff herein;

6. That, at said Juvenile Court hearing, on April 15, 1957, defendant produced evidence tending to show that he had obtained a Mexican decree of divorce from his first wife and had remarried;

7. That plaintiff did not institute her action herein for divorce, alimony, custody and support of said minor children of the parties until November 14, 1958;

8. That, since April 15, 1957, defendant's second wife has become pregnant and the birth of their child is anticipated within a few days;

9. That, in so far as said Mexican decree dissolved the marriage relation between plaintiff and defendant herein, it is valid under the principles of comity;

10. That, in so far as said Mexican decree purported to award custody

of said minor children, it was ineffective because no personal jurisdiction had been secured over the mother of said children;

11. That, said Mexican court did not and could not pass upon the mother's right to support for said minor children since no personal jurisdiction had been secured over her by said court; and

12. That said Juvenile Court of Fayette County, Ohio, made and issued a support order against defendant as a result of said hearing on April 15, 1957, and has acquired and exercised jurisdiction over plaintiff and defendant and their children with respect to the support of said children since April 15, 1957.

And, by reason of the foregoing findings and conclusions, this court makes the following ultimate finding of facts and conclusions of law:

Where plaintiff institutes an action for divorce, alimony, custody and support of minor children on November 14, 1958, and there is undisputed evidence of record showing that plaintiff had successfully prosecuted the defendant upon a complaint for non-support on April 15, 1957, during which prosecution defendant presented evidence tending to show and establish that he had obtained a Mexican divorce and thereafter remarried to another, the plaintiff's subsequent filing of a petition for divorce, alimony, custody and support, constitutes an attack upon the validity of said Mexican decree of divorce which the trial court must first consider and determine before making any award of alimony, custody and support of minor children of the parties, during the pendency of the plaintiff's action.

Since the burden of proof of undermining the verity of said Mexican decree rests heavily upon the plaintiff and the undisputed evidence of record shows that plaintiff, by reason of her prosecution of a non-support complaint against defendant, had knowledge of such foreign decree and defendant's remarriage to another for approximately nineteen months prior to instituting her action herein, and where the evidence further shows that avoidance of such Mexican decree would affect the legitimacy of a child about to be born; the trial court should recognize the Mexican decree to be valid under the principles of comity to the extent that defendant did invoke and obtain the jurisdiction of the Mexican court to dissolve his marriage relationship with the plaintiff, but in all other respects the trial court should hold that said Mexican decree does not operate extraterritorially and is not entitled to the principles of comity since the Mexican court had secured no personal jurisdiction over the plaintiff and could not pass upon plaintiff's right to alimony and her right to custody and support of said minor children.

The court must therefore conclude that, in so far as plaintiff's petition seeks a divorce from the defendant herein, that portion of her petition should be denied and dismissed; that, with regard to that portion of her petition wherein she seeks adjudication of her right to alimony, this court should retain jurisdiction thereof until her right thereto has been finally heard and determined; and that, in so far as plaintiff's petition seeks an award of custody and an award of support for her minor children, her rights thereto have been properly brought before this court and, since the record shows that the Juvenile Court of Fayette

County, Ohio, has exercised and issued a continuing order for such support, it would be for the best interest of said children to certify the matter of custody and support of said children as sought by her petition to the exclusive jurisdiction of said Juvenile Court as provided by law.

That, in the light of the evidence and the law applicable thereto as herein above set forth, the defendant's oral motion to dismiss plaintiff's motion for alimony and child support during the pendency of this action, is not well made and should be overruled and denied; and that, upon due consideration of plaintiff's motion for temporary alimony and the evidence adduced in support thereof, the same is well made and should be sustained, and defendant should be ordered and required to pay to plaintiff the sum of five dollars per week as and for temporary alimony until further order of this court.

Plaintiff's counsel should prepare an entry in conformity herewith noting therein appropriate exceptions on behalf of the defendant.