ELIZABETH C. SPALDING *v.* CHARLES F. SPALDING

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued March 2—decision released June 22, 1976

*Louis Parley,* for the appellant (plaintiff).
*Saul Kwartin,* for the appellee (defendant).

LOISELLE, J. The plaintiff, Elizabeth C. Spalding, originally brought this action in two counts, the first claiming a divorce, custody of minor children, child support, alimony and counsel fees from the defendant, Charles F. Spalding, and the second claiming a temporary injunction to restrain the defendant from pursuing in California an action pending there for dissolution of the marriage. The present action was referred to a state referee, but before it was brought to trial the California Superior Court rendered a judgment of dissolution of the marriage. The plaintiff then amended her complaint by adding a third count which sought a declaratory judgment decreeing that the California judgment was null and void. She also withdrew her claim for divorce. The second count was not pursued, and the trial proceeded on the third count. The state referee, exercising the powers of the

Superior Court, and hereinafter referred to as the court, adjudged the California divorce to be valid. The plaintiff has appealed from the judgment, including in her claims of error the court's subsequent denial of her request for counsel fees.

The plaintiff contends that the California decree was null and void because the defendant was never domiciled in California. The California suit was begun on September 14, 1970. On November 4, 1970, the present action was filed in Superior Court. On June 11, 1971, the California court granted an interlocutory divorce decree and on August 10, 1971, the decree became final.

The unattacked findings of fact are, in part, as follows: The defendant lived with the plaintiff and their children in Connecticut until 1962, when he moved to New York. In 1964, he obtained an ex parte decree of divorce at Reno, Nevada. That decree was subsequently invalidated by the New York Supreme Court on March 13, 1968, because the defendant was not a bona fide domiciliary of Nevada. On January 1, 1968, the defendant began employment with Lazard Freres whose only office in the United States was in New York City.

On May 11, 1968, the defendant married Amy Sullivan in California. Although they returned to New York to live, Amy maintained ownership of her home in Hillsborough, California, as a residence for her children. In the spring of 1969, the defendant and Amy desired to move permanently to California. During the early summer of 1969, the defendant wanted to find a permanent job in California. By the end of July, 1969, the defendant and Amy had moved from New York to California with all of their personal belongings. During Labor Day

weekend in 1969, Amy first experienced the symptoms of the fatal illness from which she died on December 19, 1969. From September 14, 1969, until Amy's death, the defendant was continually in California carrying on his employment with the exception of possibly one or two days.

After the first indications of Amy's illness, the defendant felt a responsibility for her four children from a previous marriage, and so, immediately after Amy's death, he started caring for them. In 1970, much of his time was spent dealing with them and their problems.

In January, 1970, the defendant and his employer agreed that he could work less than full time and at the end of 1970 there would be a review of his employment situation. During 1970, essentially all of the defendant's work for Lazard Freres involved California business. During that year the defendant had neither an office nor a secretary in New York, and he used his home in California as his business office. All of his work had to be referred to the New York office and new business had to be discussed in conferences held in New York. The directory issued by his employer in 1970 listed the defendant's address as Hillsborough, California.

At the end of 1970, the defendant subleased an apartment in New York for a term of one year beginning January 1, 1971. From July, 1969, to January, 1971, the defendant stayed at the River Club when visiting New York because he had no home in the area. After moving into the New York apartment the defendant returned to California once or twice a month, still helping to run the household and helping his stepchildren.

The defendant met Bernice R. Grant in June, 1970. They were together at various times in California in 1970. They became engaged in November, 1970, and were married on August 10, 1971. Shortly after their marriage the defendant and Bernice decided to move to New York. Their decision was prompted by the nature of the defendant's work, Bernice's preference to live in New York and the effect on all the children involved. The bulk of the defendant's personal belongings was not moved to New York until September, 1971, the same month in which he and Bernice arranged to buy an apartment in New York.

In September, 1969, the defendant registered as a voter in California and obtained a California driver's license. His only checking account in 1970 and 1971 was in a California bank. He filed his federal income tax for 1969 and 1970 as a resident of Hillsborough, California. He filed a California income tax return and a nonresident New York income tax return for 1970. During that year he paid California income tax based on his residence in California. On seventeen occasions during 1970, the plaintiff called the defendant at his California home. It is noteworthy that the summons in this case, filed November 4, 1970, describes the residence of the defendant as Hillsborough, California. Many paragraphs in the finding relate to various dates in 1969, 1970 and 1971, indicating the whereabouts of the defendant. It is evident from the finding, without enumerating the dates, that the defendant traveled extensively, but a majority of his time in 1971 was spent in New York.

The California judgment is entitled to full faith and credit if the California Superior Court had

proper jurisdiction to render the judgment. *Williams* v. *North Carolina,* 325 U.S. 226, 229, 65 S. Ct. 1092, 89 L. Ed. 1577, hereinafter referred to as *Williams II.* If the defendant was domiciled in California, the court had jurisdiction to dissolve the marriage.[1] *Williams II,* supra; *Williams* v. *North Carolina,* 317 U.S. 287, 297, 63 S. Ct. 207, 87 L. Ed. 279, hereinafter referred to as *Williams I;* *Taylor* v. *Taylor,* 168 Conn. 619, 621, 362 A.2d 795; *White* v. *White,* 138 Conn. 1, 8, 81 A.2d 450; see annot., 28 A.L.R.2d 1303, 1304–17. And durational domicil or residency requirements of the dissolution statutes of the decree-granting state must be met if the effect of the requirement is to limit the court's jurisdiction to grant a divorce to those cases in which the requirement is met. *White* v. *White,* supra. The court in the present action concluded that at the institution of the California divorce proceedings the defendant had been a California domiciliary for fourteen months and that this was sufficient to satisfy the jurisdictional requirements of federal and California law[2] and to entitle the judgment to full faith and credit. The plaintiff, however, contends that the federal constitution also requires that the defendant must have been domiciled in California on the day the California judgment was rendered. For this proposi-

---

[1] Section 46-35 of the General Statutes is not at issue in the present case, and we make no comment upon its jurisdictional requirements.

[2] The applicable statute provides: "A judgment decreeing the dissolution of a marriage may not be entered unless one of the parties to the marriage has been a resident of [California] for six months and of the county in which the proceeding is filed for three months next preceding the filing of the petition." Cal. Civ. Code § 4530 (a) (Deering, 1972). Under this statute, a resident is equivalent to a domiciliary. *Johnson* v. *Johnson,* 245 Cal. App. 2d 40, 44, 53 Cal. Rptr. 567. As the court concluded that the defendant complied with California law, we need not determine the jurisdictional effect of the durational domicil requirement.

tion she cites *Williams I* and *Williams II; Esenwein* v. *Commonwealth ex rel. Esenwein,* 325 U.S. 279, 65 S. Ct. 1118, 89 L. Ed. 1608;[3] *Litvaitis* v. *Litvaitis,* 162 Conn. 540, 546, 295 A.2d 519; and *Rice* v *Rice,* 134 Conn. 440, 58 A.2d 523, affirmed, 336 U.S. 674, 69 S. Ct. 751, 93 L. Ed. 957.

"In the absence of an express statutory provision to the contrary, it is well settled that if the plaintiff in a suit for a divorce satisfies the residency requirements at the time of commencing proceedings, the court's jurisdiction will survive the plaintiff's change of domicil. 24 Am. Jur. 2d, Divorce and Separation, § 256; note, 7 A.L.R.2d 1414–17; cf. note, 89 A.L.R. 1203." *Baker* v. *Baker,* 166 Conn. 476, 488, 352 A.2d 277; see 27A C.J.S., Divorce, § 74a; see also *Michigan Trust Co.* v. *Ferry,* 228 U.S. 346, 353, 33 S. Ct. 550, 57 L. Ed. 867; *Boardman* v. *Boardman,* 135 Conn. 124, 132, 62 A.2d 521; *Sampsell* v. *Superior Court,* 32 Cal. 2d 763, 781, 197 P.2d 739. There is no California statute contrary to the rule in *Baker.* Given such a rule, jurisdiction may be determined as of the day the action is begun without regard to the defendant's domicil when the decree is entered. The federal constitution does not

---

[3] The *Williams* cases involved the North Carolina prosecution for bigamous cohabitation of two individuals who had obtained Nevada divorces and then had returned to North Carolina. In *Williams I* the court reversed the judgment of conviction because the North Carolina Supreme Court had relied on *Haddock* v. *Haddock,* 201 U.S. 562, 26 S. Ct. 525, 50 L. Ed. 867, a case it overruled. The action was tried again, appealed to the state Supreme Court, and the petitioners, the defendants below, were granted certiorari by the United States Supreme Court. In *Williams II* the court said North Carolina was entitled to find that the petitioners (p. 239) "did not acquire domicils in Nevada and that the Nevada court was therefore without power to liberate the petitioners from amenability to the laws of North Carolina governing domestic relations." *Esenwein* v. *Commonwealth ex rel. Esenwein,* 325 U.S. 279, 65 S. Ct. 1118, 89 L. Ed. 1608, was decided on basically the same grounds.

demand more. *Andrews* v. *Andrews,* 188 U.S. 14, 38, 23 S. Ct. 237, 47 L. Ed. 366; *Bell* v. *Bell,* 181 U.S. 175, 21 S. Ct. 551, 45 L. Ed. 804; *Long* v. *State,* 44 Del. 262, 274, 65 A.2d 489.

*Williams I* never reached the issue whether one state could refuse full faith and credit to a sister-state divorce decree upon a finding of no bona fide domicil in the sister state.[4]  *Williams II* reached that issue but did not change, or add further requirements to, the method of determining jurisdiction that is based on domicil, despite the opinion's suggestive language in its comment on the instructions given the North Carolina jury.[5]  *Esenwein* v. *Commonwealth ex rel. Esenwein,* supra, dealt with the same issue and, like *Williams II,* did not change the determination. See *Commonwealth ex rel. Esenwein* v. *Esenwein,* 153 Pa. Super. 69, 71, 33 A.2d 675. Furthermore, in *Williams II* and *Esenwein* the trial courts found the petitioners had never acquired domicil in the other state.

---

[4] The opinion of the court said: "[W]e must treat the present case for the purpose of the limited issue before us precisely the same as if petitioners had resided in Nevada for a term of years and had long ago acquired a permanent abode there." *Williams I,* 317 U.S. 287, 292, 63 S. Ct. 207, 87 L. Ed. 279.

[5] The opinion of the court had the following comment on the jury instructions: "The burden, it was charged, then devolved upon petitioners 'to satisfy the trial jury, not beyond a reasonable doubt nor by the greater weight of the evidence, but simply to satisfy' the jury from all the evidence, that petitioners were domiciled in Nevada at the time they obtained their divorces." *Williams II,* 325 U.S. 226, 235, 65 S. Ct. 1092, 89 L. Ed. 1577. The opinion of the North Carolina Supreme Court, however, contained the following: "The court further instructed the jury that since the defendants had set up these foreign judgments as a defense [against charges of bigamous cohabitation] and the prosecution had challenged them, the practice in this jurisdiction was to require the defendants to show to the satisfaction of the jury that they had acquired bona fide domicils in the foreign state at the time of the institution of the divorce proceedings." *State* v. *Williams,* 224 N.C. 183, 191, 29 S.E.2d 744.

Turning to the Connecticut cases, the court's language in *Rice* v. *Rice,* 134 Conn. 440, 441, 58 A.2d 523, a case involving the recognition of a Nevada divorce decree, supports the plaintiff's position. That language equated domicil on the date of the decree with the proper jurisdiction for recognition under the full faith and credit clause. It must be read, however, in the light of the fact that the state referee in that case found that the complainant in the Nevada action had never acquired domicil in Nevada. Furthermore, in the later case of *White* v. *White,* 138 Conn. 1, 8, 81 A.2d 450, the court looked to domicil at the date the action in the other state began.[6] *Rice* v. *Rice,* supra, is inconsistent with both *Baker* v. *Baker,* supra, and *White* v. *White,* supra, and, to the extent of the inconsistency, it is overruled. The court in the present action properly looked to domicil at the institution of suit.[7]

The plaintiff asserts that the findings do not support the conclusion that the defendant was domiciled in California when the California action began, and the conclusion that the California durational domicil requirement had been met. "To constitute domicil, the residence at the place chosen for the domicil must be actual, and to the fact of residence there must be added the intention of remaining permanently; and that place is the domicil of the person in which he has voluntarily fixed his habita-

---

[6] Another case relied upon by the plaintiff, *Litvaitis* v. *Litvaitis,* 162 Conn. 540, 295 A.2d 519, was decided, not pursuant to the command of the full faith and credit clause, but under the principle of comity.

[7] That the complaining party in the sister state was not a domiciliary on the date of the decree is a fact that should not be disregarded. It is a fact, among others, tending to show the intention of that party. See *Long* v. *State,* 44 Del. 262, 274, 65 A.2d 489.

tion, not for a mere temporary or special purpose, but with the present intention of making it his home, unless or until something which is uncertain or unexpected shall happen to induce him to adopt some other permanent home." *Mills* v. *Mills,* 119 Conn. 612, 617, 179 A. 5; *Adame* v. *Adame,* 154 Conn. 389, 391, 225 A.2d 188. Whether the court was warranted in concluding that the defendant had established a bona fide domicil in California depends upon whether that is a reasonable inference from the subordinate facts found. No detailed discussion is required to demonstrate that the facts recited afford a sufficient basis for the conclusions that the defendant was domiciled in California at the institution of the suit, and that the plaintiff did not overcome the presumption that the California court had jurisdiction.

Since this court has reviewed the merits of the case, it is not necessary to explore, in depth, the court's conclusion, and the defendant's argument, that the plaintiff apppeared in the California dissolution action and either did or could have contested the jurisdiction of the court in that action, and that she has been barred from litigating the jurisdictional issue in this action. We note from the finding that the plaintiff entered a special appearance in the California action seeking dismissal of the action on the ground of forum non conveniens. Her main argument relied on the order of the Connecticut Superior Court enjoining the defendant from pursuing the California action. The plaintiff did not make a general appearance in the action, did not personally appear in California, and did not litigate the issue of domicil in that action. On those facts, it cannot be held that the doctrine of *Sherrer* v. *Sherrer,* 334 U.S. 343, 68 S. Ct. 1087, 92 L. Ed. 1429,

bars a collateral attack on the jurisdiction of the California Superior Court. See cases in annot., 28 A.L.R.2d 1303, 1317–34.

The plaintiff claims error in the court's refusal to grant counsel fees to the plaintiff. The power to make an allowance for counsel fees in litigation pertaining to divorce matters is inherent in the court. *Krasnow* v. *Krasnow,* 140 Conn. 254, 261, 99 A.2d 104. The allowance for counsel fees, and the amount, is a matter which, like the fixing of alimony, calls for the exercise of judicial discretion. Id., 262; *Felton* v. *Felton,* 123 Conn. 564, 567, 196 A. 791. "The basis of the allowance [to a wife for expenses of divorce litigation] is that she should not be deprived of her rights because she lacks funds which may be supplied from property in which as a wife she has a real interest but which is usually within the control of the husband." *Steinmann* v. *Steinmann,* 121 Conn. 498, 505, 186 A. 501; *Stoner* v. *Stoner,* 163 Conn. 345, 356, 307 A.2d 146; *England* v. *England,* 138 Conn. 410, 416, 85 A.2d 483. The plaintiff, at the time of judgment, had assets of $400,000. The record supports the conclusion that the plaintiff had ample funds to litigate the present case. The court did not abuse its discretion in refusing to allow counsel fees. As the court specifically exercised its discretion in this matter, its further conclusion that counsel fees could not be awarded in an action for a declaratory judgment need not be examined.

There is no error.

In this opinion the other judges concurred.