## MATTER OF WEAVER

### In Visa Petition Proceedings

### A–21043291

### Decided by Board May 16, 1979

(1) The validity of a divorce entered into while neither party to it is domiciled in th e place where it was granted, but where both parties appeared for the divorce, should first be judged by the law of the jurisdiction where the parties to the divorce were domiciled at the time of the divorce. Since the place where the parties to the divorce were domiciled at the time of the divorce was the only place then having an interest in the proceedings, the parties should be able to rely on the law of that jurisdiction, even if they move to another jurisdiction.

(2) *Matter of Biebl*, Interim Decision 2672 (BIA 1978), holding that a Dominican Republic divorce entered into by New York domiciliaries (including the petitioner) was invalid for immigration purposes because the divorce would not have been recognized in Connecticut, where the petitioner and the beneficiary had married, and were living, is overruled. The validity of the divorce should first have been judged by New York law.

(3) The Connecticut Supreme Court's holding that at least one of the parties to a foreign divorce must have a bona fide domicile in the country granting the divorce in order for the divorce to be recognized (*Litvaitis* v. *Litvaitis*, 162 Conn. 540 (1972)) will not be disturbed by the present decision, since in *Litvaitis*, the parties to the divorce were domiciled in Connecticut at the time of the divorce, so Connecticut had an interest in the divorce at the time it was rendered.

(4) In a case involving an immediate relative visa petition, the record will be remanded to the District Director to enable the petitioner to show that the Bahamas, where the beneficiary and her first husband were domiciled at the time of their divorce, would recognize the Dominican Republic divorce. There should then be a determination of whether Connecticut would consider the divorce valid if the Bahamas would.

ON BEHALF OF PETITIONER:   Ryszard S. Mrotek, Esquire
                           360 Main Street
                           Hartford, Connecticut 06106

BY: Milhollan, Chairman; Maniatis, Appleman, Maguire, and Farb, Board Members

This is an appeal from a decision of the District Director, dated October 17, 1978, denying a visa petition filed on behalf of the beneficiary as the petitioner's wife under section 201(b) of the Immigration and Nationality Act, 8 U.S.C. 1151(b). The record will be remanded.

The petitioner is a 28-year-old native and citizen of the United States. He married the beneficiary, a 30-year-old native and citizen of Jamaica,

on July 29, 1977, and filed the instant visa petition on her behalf on May 24, 1978. The marriage was the first for the petitioner and the second for the beneficiary. The beneficiary's first marriage was dissolved by a Dominican Republic divorce decree dated February 3, 1977. The record contains a copy of this decree, which relates that both parties to the marriage appeared in the Dominican Republic in order to effect the divorce, but that neither party resided in or was domiciled in the Dominican Republic. Rather, both the beneficiary and her first husband lived in the Bahamas at the time of their divorce.

The District Director in denying the petition found that the beneficiary's divorce from her first husband was ineffective under Connecticut law, and that, consequently, her marriage to the petitioner was invalid. He relied for these findings on *Litvaitis* v. *Litvaitis*, 162 Conn. 540 (1972) and *Spaulding* v. *Spaulding*, 171 Conn. 220 (1976). In *Litvaitis*, the Connecticut Supreme Court held that at least one of the parties to a foreign divorce must establish a domicile in the jurisdiction in which the divorce is sought in order to give the court jurisdiction to grant the divorce. This principle was said to apply even if domicile was not required by the laws of the foreign jurisdiction granting the divorce. *Spaulding* set forth the rule that, for purposes of establishing jurisdiction of a court to grant a divorce, "domicile" is that place where a person has voluntarily fixed his habitation, not for mere temporary or special purpose, but rather with a present intention of making it his home, unless or until something which is uncertain or unexpected happens to induce him to adopt some other permanent home.

On appeal, the petitioner argues that the validity of the Dominican divorce must be determined under the law of the Bahamas, rather than under Connecticut law. He contends that, because the parties to the divorce had no connection with Connecticut at the time the divorce was granted, Connecticut's interest in that proceeding "is too slight to justify resort to Connecticut law to judge the validity of the divorce." We agree, and in so holding we overrule our prior decision in *Matter of Biebl*, Interim Decision 2672 (BIA 1978). In *Biebl*, we held that *Litvaitis*, *supra*, and *Spaulding*, *supra*, applied to invalidate a Dominican Republic divorce obtained by the petitioner and his first wife who were domiciled in New York at the time of their divorce. The petitioner's second marriage in Connecticut was therefore held to be invalid, and could not support a visa petition. The only difference between the facts in *Biebl* and those in the present case is that the parties to divorce in *Biebl* were New York domiciliaries when their marriage was dissolved, rather than domiciliaries of the Bahamas. Hence, a reversal of *Biebl* is the necessary consequence of our decision in this case.

The Connecticut cases relied upon in *Biebl*, *supra*, did not dictate the result reached in that case. In *Litvaitis*, *supra*, the parties to the

Mexican divorce were both domiciled in Connecticut at the time of the divorce, so Connecticut had a clear interest in the divorce at the time it was rendered. *Spaulding, supra,* merely set forth a definition of "domicile" for divorce purposes. In *Biebl, supra,* as well as in the instant case, the situation involved a marriage in one place, a bilateral (where neither party has established domicile, but both parties appear or are represented at the divorce proceedings), foreign (Dominican Republic) divorce, then remarriage by one of the parties to the divorce in another jurisdiction. This factual situation means that our decision here will in no way interfere with or be contrary to the holdings of the Connecticut Supreme Court.

Several commentators have addressed the choice of law issue [1] involved in *Biebl, supra,* and in the present case, and all have indicated that a divorce valid in the jurisdiction in which the parties to it lived at the time of the divorce should be given full effect in a second state. See Comment, "New York Approved Mexican Divorces: Are They Valid in Other States?" 114 U. PA. L. REV. 771 (1966); Foster, "Recognition of Migratory Divorces: Rosenstiel v. Section 250," 43 N.Y.U. L. REV. 429 (1968); Currie, "Full Faith and Credit, Chiefly to Judgments: A Role for Congress," 1964 SUP. CT. REV. 89. The rationale of these articles is bottomed on considerations of fundamental fairness and reasonable expectations: Since the place where the parties to the divorce were domiciled at the time of the divorce was the only place with an interest in the proceedings at that time, the parties should be able to rely on the law of that state, even if they move to another jurisdiction. As was written in the University of Pennsylvania article, at 777 and 778,

> People anticipating divorce are most familiar with the law of their domiciles; it is that law, if any, upon which they act in reliance. If, after having secured a divorce in a manner sanctioned in their home state, they establish residence elsewhere, it is unjust to defeat the reasonable expectations upon which they originally acted. State X, then, having had no relationship with the party or the divorce proceeding at the time it took place, should refrain from applying its law . . .
>
> The interest of the sister state did not exist at the time of the divorce—the transaction on which the rights of the parties depend. The rights of the divorced parties became settled and would be drastically unsettled by the application of another state's law. Such application would be an unfair interference with reasonable expectations.

This article also notes that although there have been few cases dealing with recognition of foreign divorces in a jurisdiction in which neither party resided at the time of the divorce, "those few cases are unanimous in holding that the law of the jurisdiction in which the parties were

---

[1] The issue is one of choice of law, rather than of full faith and credit, since in the usual case there is no judicial decree specifically declaring a divorce to be valid. Where there is such a judgment from a state, it must of course be given full faith and credit in a sister state. U.S. CONST. art. IV, § 1.

domiciled at the time of the divorce should be applied in determining the validity of the divorce." *Id.* at 777.[2]

We believe that the rationale expressed in the commentaries is sound, and should be followed. If parties obtain a divorce in a manner which is considered valid in the place in which they reside at the time of divorce, it is reasonable for those persons to rely on the validity of their divorce, wherever they may be. To hold otherwise would create constant problems in our increasingly mobile society. Hence, if Bahamian law recognizes the beneficiary's Dominican Republic divorce from her first husband, then we believe that divorce should be considered valid for immigration purposes. Accordingly, the record will be remanded to the District Director in order to give the petitioner an opportunity to prove the law of the Bahamas on this issue.[3] See *Matter of Annang*, 14 I. & N. Dec. 502 (BIA 1973). After considering any evidence presented, the District Director should render a new decision in accordance with *Matter of To*, 14 I. & N. Dec. 679 (BIA 1974).

ORDER: The record is remanded to the District Director for further proceedings consistent with this opinion.

---

[2] We note that very few states recognize foreign divorces such as those involved in *Biebl, supra,* and in the present case. Thus, in the typical situation, the problem herein addressed will not arise.

[3] We recognize, however, that ultimately we will have to decide whether or not Connecticut would recognize the divorce in question, if the Bahamas would.