[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The above matter has a long history. A dissolution action was made returnable on March 18, 1997, and the case went to judgment, after a contested hearing, on December 29, 1998. There have been at least forty motions, more than ten of which involved motions for contempt filed by the plaintiff. The Court has had a great deal of familiarity with the matter. Both of the parties resided in Newtown, Connecticut, at the commencement of the action, but sometime before judgment, the plaintiff moved to the Province of Ontario in Canada with their two minor children. Throughout the pretrial proceedings, she came back to this Court to diligently pursue and defend motions on a regular basis. The two minor children came back and forth from Ontario for visitation purposes in Newtown, and the defendant went back and forth from Newtown to Ontario to exercise his visitation rights.
By judgment entered December 29, 1999, the Court entered orders relating to alimony, child support, custody and visitation. Since the plaintiff and the two minor children were residing in Ontario at the time of trial and judgment, visitation was ordered primarily in Canada except for a period in the summer when visitation would take place in Newtown. An attorney appeared for the defendant on January 21, 1999 and sought to reargue the memorandum of decision and submitted a detailed motion. The Court, after hearing, modified the child support orders and adjusted the arrearage. No appeal was filed from the Court's judgment and no issue of jurisdiction was raised until July 2, 1999.
On January 27, 1999, before the ink was dry in the judgment, a post judgment motion for contempt was filed by the plaintiff alleging nonpayment of alimony, support and counsel fees, and on CT Page 9579 February 8, 1999, after failing to appear, the defendant was found in contempt.
On March 22, 1999, the defendant was again found to be in wilful contempt as the result of two motions for contempt dated February 8, 1999 filed by the attorney for the minor children. Again, the defendant failed to appear and a capias was ordered with bond set at $10,000. All of the contempt proceedings post judgment relate to the Court's December 29, 1998 judgment and orders. On July 2, 1999, counsel for defendant for the first time claims this Court no longer has personal jurisdiction over the parties to enforce the judgment because the defendant had moved to Ontario and none of the parties currently reside in this jurisdiction. The plaintiff is resolute in pursuing her claims in this court. The history of this case demonstrates that the defendant has brazenly and consistently violated the Court's orders.
"A Motion to Dismiss is the proper method of raising in personam and subject matter jurisdiction in family matters."Jepson v. Jepson, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 156588 (April 29, 1998, Tierney, J.) (22 Conn. L. Rptr. 171), citing, Labow v. Labow,171 Conn. 433, 436-37, 370 A.2d 990 (1976); Practice Book (1998 Rev.) § 25-13.
There is a two-part test to determine whether the court has jurisdiction over the defendant to hear and decide the matter. First, the court must find that the state's long arm statute authorizes jurisdiction and then, the court must separately analyze whether the defendant's constitutional due process rights were violated. Frazer v. McGowan, 198 Conn. 243, 246,502 A.2d 905 (1986). "Section 46b-46 (b) [of the Connecticut General Statutes] is a long arm statute applicable to all matters concerning alimony and support, and is not limited to complaints for dissolution, annulment, legal separation and custody. Subsection (b) allows a court to assert personal jurisdiction over a nonresident defendant for judgments that operate in personam and bind the obligor personally and imposes greater requirements that does subsection (a)." (Citations omitted.)Cashman v. Cashman, 41 Conn. App. 382, 387, 676 A.2d 427 (1996). General Statutes § 46b-46(b) provides that "[t]he court may exercise personal jurisdiction over the nonresident party as to all matters concerning temporary or permanent alimony or support of children, only if: (1) The nonresident party has received CT Page 9580 actual notice under subsection (a) of this section; and (2) the party requesting alimony meets the residency requirement of section 46b-44."
In the present case, the defendant received actual notice of the pending motion for contempt when his attorney was served with the motion. In fact, according to the defendant's affidavit, he was still a resident of Connecticut when the January 22, 1999 motion for contempt was filed, having moved to Canada "on or about February 8, 1999." (Def. Aff., ¶ 4.) As to the residency requirement of the movant, the Connecticut Supreme Court has held that "[i]n the absence of an express statutory provision to the contrary, it is well settled that if the plaintiff in a suit for a divorce satisfies the residency requirements at the time of commencing proceedings, the court's jurisdiction will survive the plaintiff's change of domicile." Spalding v. Spalding,171 Conn. 220, 226, 368 A.2d 14 (1976). See also Sweeney v. Sweeney, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 285682 (July 1, 1993, Norko, J.) (the court used the Spalding quote to distinguish O'Riordan v. O'Riordan, Superior Court, judicial district of Danbury, Docket No. 283238 (October 17, 1988, Fuller, J.) (1988 C.S.C.R. 896), which the defendant in the present case relies on). While the O'Riordan
court held that a plaintiff must reestablish her residency under § 46b-46(b) to bring a post-divorce proceeding in Connecticut, this court does not agree with that conclusion.[1]
A post judgment motion for contempt is closely connected to the divorce decree and as a result, the residency established when the complaint was filed applies. Therefore, the second prong of § 46b-46(b) is met because the plaintiff was a resident of Connecticut at the commencement of the action for divorce.
Furthermore, the Spalding court asserted that "jurisdiction may be determined as of the day the action is begun without regard to the defendant's domicil when the decree is entered. The federal constitution does not demand more." Spalding v. Spalding, supra, 171 Conn. 226-27. The United States Supreme Court drew the same conclusion many years ago when it stated that "if a judicial proceeding is begun with jurisdiction over the person of the party concerned[,] it is within the power of a State to bind him by every subsequent order in the cause." Michigan Trust Co. v.Ferry, 228 U.S. 346, 353, 33 S.Ct. 550, 57 L.Ed. 867 (1913). The defendant in the present case is still bound by any decision this court makes concerning the December 29, 1998 judgment dissolving the marriage and ordering payment of alimony and child support. CT Page 9581 "A court must have the authority to enforce its own judgments; it must protect the integrity of its decisions by subsequent orders of enforcement." Sweeney v Sweeney, supra, Superior Court, Docket No. 285682, citing, Turgeon v. Turgeon, 190 Conn. 269, 284,460 A.2d 1260 (1983). This post judgment motion for contempt is in direct response to the defendant's noncompliance with the divorce decree and is clearly connected to the court's responsibility to enforce its judgment.
Having found statutory authority for the court's jurisdiction over the defendant, the court must now ensure it will not violate the defendant's right of due process by hearing the motion in Connecticut. "The due process clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations. Burger King Corp. v. Rudzewicz, 471 U.S. 462,471-72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1984). The United States Supreme Court has held that the test to be applied in considering the reach of personal jurisdiction is whether (1) the nonresident party has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protection of the laws of the state, and (2) the exercise of jurisdiction based on those minimum contacts would not offend traditional notions of fair play and substantial justice. Asahi Metal Industry Co. v. Superior Court,480 U.S. 102, 111-12, 107 S.Ct. 1026, 94 L.Ed.2d 92
(1987). . . . The court must look at the totality of the party's conduct and connection with this state and determine whether the party could have reasonably anticipated being haled into court in Connecticut. Frazer v. McGowan, supra, 198 Conn. 249." (Citations omitted.) Cashman v. Cashman, supra, 41 Conn. App. 389.
Connecticut Superior Court judges have found sufficient minimum contacts with facts similar to the case at bar. In Newmanv. Newman, Superior Court, judicial district of Danbury, Docket No. 306968 (July 20, 1995, Riefberg, J.) (14 Conn. L. Rptr. 501), the court determined that the defendant had purposefully availed himself of the benefits and protection of the state by living in Connecticut during his marriage, appealing the divorce decree in Connecticut, appearing for oral arguments at the Appellate Court, maintaining a Connecticut attorney and actively participating in the case in the year leading up to the contempt hearing. In another decision relating to a post judgment motion for contempt, the court held that it retained jurisdiction even though both parties no longer resided in Connecticut. Sweeney v. Sweeney, CT Page 9582 supra, Superior Court, Docket No. 285682. The court found that the defendant had minimum contacts with Connecticut since he had in the prior year filed a motion for modification here, his mother lived here and his company's principal place of business was here.
The cases relied on by the defendant are easily distinguishable, because they do not have sufficient facts to satisfy a minimum contacts analysis. In O'Riordan, both parties moved away from Connecticut and sought the assistance of the courts in their respective new locations. Shortly after the Connecticut court issued a judgment of legal separation and before the dissolution was entered, the defendant moved to Georgia and filed an action for a decree of divorce. Later on, the plaintiff moved to Washington, D.C. where an action was pending. While both parties also filed motions in Connecticut during that same period, it was clear that neither party had maintained any minimum contact with the state. In Abrams v.Abrams, Superior Court, judicial district of Danbury, Docket No. 291392 (December 21, 1994, Moraghan, J.), the court held that it had continuing jurisdiction to hear the motion for modification based on statutory authority, but made a finding that the nonmoving party had no minimum contacts with Connecticut. The only connection to the state was through the movant, the defendant in the original divorce decree, who tendered his support payments through the Connecticut Bureau of Support. In fact, all prior post judgment motions made by both parties occurred while the movant resided in Connecticut. Id.
Just five months prior to filing a motion to dismiss for lack of personal jurisdiction and one month after the divorce decree was rendered, the defendant, in the present case, was living in Connecticut, availing himself of this state's resources and protected by its laws. After having knowledge of the plaintiff's January 22, 1999 post-judgment motion for contempt for not paying alimony and child support, the defendant moved to Canada and claimed no connection to Connecticut. However, as stated in his affidavit, the defendant admits to returning to Connecticut about six times since his February 8, 1999 move. (Def. Aff., ¶ 10.) This amounted to more than one visit a month and included both professional and social commitments. Furthermore, the defendant continues to retain an attorney in Connecticut and as late as January 21, 1999, moved to reargue the judgment of divorce before this Court resulting in a modification of child support and arrearage. Therefore, this Court has sufficient minimum contacts CT Page 9583 with the defendant to satisfy the constitutional due process requirements.
This Court retains jurisdiction over the defendant to hear the contempt motion. Accordingly, the defendant's motion to dismiss is denied.
Owens, J.